# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA ANN SANCHEZ, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:17-cv-01728- JLT <br><br> ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF TERESA ANN SANCHEZ AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Teresa Ann Sanchez asserts she is entitled to benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred finding she can perform work existing in significant numbers in the national economy. Because the ALJ's decision lacks the support of substantial evidence, the administrative decision is **REMANDED** for further proceedings.

## **PROCEDURAL HISTORY**

On December 6, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning October 1, 2013. (Doc. 7-6 at 3) The Social Security Administration denied the applications at the initial level and upon reconsideration. (*See generally* Doc. 7-4) Plaintiff requested a hearing, and she testified before the ALJ on May 9, 2016. (Doc. 7-3 at 21, 38) At that time, the ALJ also obtained testimony a vocational expert. (*See id.*) On October 13, 2016, the ALJ issued an order finding Plaintiff was not disabled as defined by the Social Security Act. (Doc.

7-3 at 21-30) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on October 25, 2017. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of October 5, 2012. (Doc. 7-3 at 23) At step two, the ALJ found Plaintiff's severe impairments included: "sleep apnea, anxiety disorder, and depressive disorder." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 24-25) Next, the ALJ determined: "[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she can perform only simple, routine, and repetitive tasks." (*Id.* at 25)

Based upon the vocational expert's testimony, the ALJ determined at step four that Plaintiff was not able to perform past relevant work. (Doc. 7-3 at 28) However, the ALJ found at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," because the vocational expert testified "the full range of unskilled light and sedentary jobs" was available to someone with Plaintiff's residual functional capacity. (*Id.* at 29) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 29-30)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the ALJ's findings at step five are not consistent with the residual functional capacity ("RFC") identified by the ALJ. (Doc. 11 at 6) She contends the limitation to "only simple, routine, and repetitive tasks" results in "an unknown level of the occupational base" of unskilled work. (*Id.* at 8) Thus, Plaintiff argues the Commissioner fails to meet the burden to demonstrate "that a

3

significant number of jobs exist in the national economy" that Plaintiff can perform with the restrictions identified by the ALJ in the RFC. (*Id.* at 8)

**A.    ALJ's Step Five Findings**

At step five, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful activity and a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001) (discussing the burden shift at step five). To make this determination, the ALJ may rely upon job descriptions in the *Dictionary of Occupational Titles* ("DOT"), which classifies jobs by their exertional and skill requirements, and is published by the United States Department of Labor, Employment & Training Administration. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 404.1566(d)(1). In the alternative, the ALJ may call a vocational expert "to testify as to (1) what jobs the claimant, given his or her functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see also* Social Security Ruling ("SSR") 00-4p[1], 2000 WL 1898704 at *2 ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.")

The ALJ called upon vocational expert Lynda Berkley ("the VE") to "determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base." (Doc. 7-3 at 29) The ALJ asked the VE to consider a hypothetical individual with the physical and mental limitations identified in the residual functional capacity for Plaintiff, including a restriction to "simple, repetitive tasks because of depressive symptoms." (*Id.* at 53) The VE testified a person with the limitations identified could not perform Plaintiff's past relevant work because "none of the past work [was] unskilled." (*Id.* at) The ALJ inquired whether the limitations "would permit the full range of light, sedentary, and unskilled" work, to which the VE responded, "That's correct." (*Id.*) The ALJ did not inquire whether this

---

[1] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

4

testimony from the VE conflicted with the *Dictionary of Occupational Titles*, and the VE did not identify any conflict. (*See* Doc. 7-3 at 53-60)

### 1.     Application of the Grids

As an initial matter, the Court notes the parties disagree upon the basis for the ALJ's step five determination. Plaintiff argues that the ALJ citied only the testimony of the vocational expert (see Doc. 13 at 8), while Defendant asserts "the ALJ properly relied on the Medical-Vocational Guidelines to find Plaintiff not disabled at step five." (Doc. 12 at 7, emphasis omitted)

According to Defendant, "At step five of the sequential evaluation process, the ALJ found that Plaintiff could perform work existing in significant numbers based on the Medical-Vocational Guidelines." (Doc. 12 at 7) Defendant contends:

> [T]he ALJ cited both the vocational expert's testimony and the Medical-Vocational Guidelines to find Plaintiff not disabled at step five (AR 28). Plaintiff was born in 1967, and was therefore 49 years old at the time of the ALJ's decision (AR 24, 27, 163), a younger individual under the regulations. *See* 20 C.F.R. 404.1563(c). She had at least an eleventh-grade education (AR 27, 203 (claiming an 11th-grade education); *but see* AR 483, 837 (reporting a high school diploma)), which is a limited education under the regulations. *See* 20 C.F.R. 404.1564(b)(3). She could perform light work (AR 24), a finding Plaintiff does not challenge. An individual with these characteristics is not disabled under the Medical-Vocational Guidelines. See 20 C.F.R., pt. 404, subpt. P, app. 2, §§ 202.18, 202.19. The only remaining question was whether Plaintiff's non-exertional restrictions precluded the use of the Medical-Vocational Guidelines. Based on vocational expert testimony, they did not.

(Doc. 12 at 8)

Significantly, despite Defendant's contentions to the contrary, the ALJ did not apply the Medical-Vocational Guidelines ("grids[2]") to determine Plaintiff was not disabled at step five. The ALJ observed: "If the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantively all of the requirements of this level work has been impeded by additional limitations." (Doc. 7-3 at 29) Consequently, the ALJ did not apply Rule 202.18 to determine Plaintiff was disabled and instead called a vocational expert. Indeed, the grids indicate that where a claimant—such as Plaintiff— has a limited or less education and the work history includes

---

[2] The Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2, are commonly known as "the grids". *See, e.g., Bragdon v. Astrue,* 2010 U.S. Dist. LEXIS 31086, at *22 (E.D. Cal. Mar. 31, 2010).

skilled or unskilled work, a disability determination must be completed. There is no direction that the claimant be deemed "not disabled." *See* 20 C.F.R. Part 404, Subpart P, Appendix, Rule 202.18.

Consistent with the grids, the Ninth Circuit explained that "when a claimant has both exertional [strength-related] and nonexertional limitations . . . , the grids are inapplicable and the ALJ must take the testimony of a VE." *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000); *see also* SSR 83-12 (requiring an adjudicator to consult a vocational resource when "the extent of erosion of the occupational base is not clear). Because the ALJ determined Plaintiff's severe impairments included anxiety disorder and depressive disorder and limited her to "only simple, routine, and repetitive tasks" (Doc. 7-3 at 23, 25), reliance upon the grids to determine whether Plaintiff had the ability to perform work in the national economy would have been an error.

The record clearly does not support Defendant's assertion that the ALJ relied upon the grids to find Plaintiff was disabled, or that such reliance would be proper given Plaintiff's non-exertional limitations. Accordingly, the Court must determine whether the vocational expert's testimony supports the step five determination.

### 2. Conflict with the *Dictionary of Occupational Titles*

Pursuant to SSR 00-4p, occupational evidence provided by a vocational expert "generally should be consistent with the occupational information supplied by the DOT." *Id.*, 2000 WL 1898704 at *2. When there is a conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert testimony] to support a determination or decision about whether the claimant is disabled." *Id.* Further, SSR 00-4p provides:

> At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.

*Id.* Accordingly, the Ninth Circuit determined an ALJ must inquire "whether the testimony conflicts with the *Dictionary of Occupational Titles*," and may only rely upon conflicting expert testimony when "the record contains persuasive evidence to support the deviation." *Massachi v. Astrue*, 486 F.3d 1149,

1153 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

   a. Reasoning levels and unskilled work under the *Dictionary of Occupational Titles*

  In the *Dictionary of Occupational Titles*, each job each job description includes a General Educational Development ("GED") definition that "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Salas v. Astrue*, 2011 WL 2620370 at *5 (E.D. Cal. June 29, 2011) (quoting *Grigsby v. Astrue*, 2010 WL 309013 at *2 (C.D. Cal. Jan. 22, 2010)). The GED scale includes a scale for "reasoning development," which ranges from Level 1 (low) to Level 6 (high). *Id.* Reasoning Levels 1 through 3 require the following cognitive functioning:

> Level 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT- Appendix C, Section III, 1991 WL 688702.

  In addition, the *Dictionary of Occupational Titles* includes Special Vocational Preparation ("SVP") levels for each vocation, which indicates "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1231, n. 4 (9th Cir. 2009) (quoting *DOT*, Appendix C, p. 1009 (4th ed.1991)). The Commissioner has determined that certain SVP Levels 1 and 2 in the *Dictionary of Occupational Titles* correspond with the definition of unskilled work. SSR 00-4p, 2000 SSR LEXIS 8.

   b. Whether there is a conflict

  Plaintiff asserts that with the RFC identified by the ALJ—limiting her to "only simple, routine, and repetitive tasks"— she is precluded from completing work that requires Reasoning Level 3, and as such the occupational base for unskilled work is eroded. (Doc. 11 at 6-7) In this manner, Plaintiff asserts the VE's testimony that she can perform the "full range" of unskilled work at the light level is

not proper, because "unskilled" work under the *Dictionary of Occupational Titles* may require Reasoning Level 3. (*Id.*)

Significantly, several courts have determined a claimant's ability to perform "simple, repetitive tasks" may not support a finding that the claimant can perform the full range of "unskilled" work available in the national economy. *See, e.g., Gonzalez v. Astrue,* 2012 WL 14002 *11 (E.D. Cal. Jan. 4, 2012) ("courts have concluded that a claimant's limitation to 'simple, repetitive tasks' is incompatible with DOT job titles assigned a reasoning level of 3"); *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting the argument that a claimant limited to following only simple instructions could engage in full range of sedentary work, because many unskilled jobs in that category required a reasoning level beyond the claimant's abilities). *Frye v. Astrue*, 2012 WL 1831548, at *23 (N.D. Ohio Apr. 9, 2012) ("the set of jobs that comprise the category of 'unskilled' jobs are not identical to the set of jobs that comprise the category of 'simple, routine' jobs and that not every job that is 'unskilled' is also 'simple, routine and repetitive'"); *Boler v. Colvin*, 2013 WL 5423647 (M.D.N.C. Sept. 26, 2013) ("it is clear that simple, routine, repetitive work is a narrower category (meaning greater limitations) than unskilled work in general"). Thus, a claimant's limitation to simple, repetitive tasks may conflict with a determination that the claimant can perform *all* unskilled work.

Moreover, the Ninth Circuit determined "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The Court explained that "it may be difficult for a person limited to simple, repetitive tasks to follow instructions in 'diagrammatic form'" as required with Reasoning Level 3, because "such instructions can be abstract." *Id.* (citation omitted). Indeed, Defendant recognizes the Ninth Circuit determined in *Zavalin* that there is a conflict between Reasoning Level 3 and the limitations imposed by the ALJ. (Doc. 12 at 9) Accordingly, the Court also finds there is also a conflict between the VE's testimony and the *DOT* job descriptions for unskilled work—which may require Reasoning Level 3.[3]

///

---

[3] For example, this Court previously that the job of surveillance system monitor is identified under the *DOT* as unskilled (requiring SVP level 2) but also requires Reasoning Level 3, which is incompatible with simple, repetitive tasks. *See Gonzalez*, 2012 WL 14002 at*13 (citing DOT 379.367-010, 1991 WL 673244).

### c. Whether the record supports the deviation

When there is a conflict between the testimony of a vocational expert and the *Dictionary of Occupational Titles*, the Court may rely upon the testimony only when "the record contains persuasive evidence to support the deviation." *Massachi*, 486 F.3d at 1153. In this case, there is no indication in the record that the ALJ was aware of the conflict, and he indicated his step five decision was "[b]ased on the testimony of the vocational expert." (Doc. 7-3 at 29)

Because the ALJ did not address the conflict— and the vocational expert did not explain her conclusions that Plaintiff could perform the "full range" of unskilled work despite the limitation to simple, repetitive tasks— the record cannot support the deviation from the *Dictionary of Occupational Titles*. *See Johnson*, 60 F.3d at 1435; *Rawlings v. Astrue*, 318 Fed. Appx. 593, 595 (2009) ("Only after determining whether the vocational expert has deviated from the *Dictionary of Occupational Titles* and whether any deviation is reasonable can an ALJ properly rely on the vocational expert's testimony as substantial evidence to support a disability determination.")

## B. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record was fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Based upon the record, the Court is unable to determine the extent to which Plaintiff is able to perform work in the national economy, and whether such positions exist in significant number.

Accordingly, a remand for further proceedings is appropriate in this matter. *See Zavalin v. Colvin,* 778 F.3d 842, 848 (9th Cir. 2015) (an ALJ's failure to reconcile apparent conflict was not harmless where the ALJ failed to recognize a conflict and did not ask the vocational expert why a person with the limitation to simple and routine tasks "could nevertheless meet the demands of Level 3 Reasoning").

## CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes the ALJ erred by failing to resolve the conflict between the testimony of the vocational expert and the *Dictionary of Occupational Titles*.[4] Because the ALJ failed to apply the correct legal standards, the testimony of the vocational expert cannot support the conclusion that Plaintiff is able to perform work in the national economy. *See Zavalin*, 778. F.3d at 846; *Rawlings*, 318 Fed. Appx. at 595. Consequently, the ALJ's decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Because the Court finds remand is appropriate on these grounds, it offers no findings on the remaining arguments presented in Plaintiff's opening brief. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Teresa Sanchez and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __March 11, 2019__        __/s/ Jennifer L. Thurston__
UNITED STATES MAGISTRATE JUDGE

---

[4] In doing so, the Court does not mean to suggest the ultimate determination was not correct; rather, there is a gap in the evidence such that the Court cannot determine whether it was correct.